EXHIBIT B

| NORTH CAROLINA | | GENERAL COURT OF JUSTICE |
| CRAVEN COUNTY | FILED | SUPERIOR COURT DIVISION |
| | 2018 MAR -5 P 2:35 | File No.: 18CV500290 |

MICHAEL DEWAYNE MILLER, CRAVEN COUNTY, C.S.C.
  Plaintiff,
vs. BY _____

GERBER COLLISION (NORTHEAST), INC.;
BOYD GROUP (U.S.) INC;
CHRISTOPHER HARDIN;
Defendants.

**COMPLAINT**
DISABILITY DISCRIMINATION
(N.C.G.S. 168-A);
WRONGFUL DISCHARGE;
INTERFERENCE WITH
CONTRACT.
(JURY TRIAL DEMANDED)

**Plaintiff complaining of acts** of the defendant alleges and states:

1. Plaintiff Michael Dewayne Miller is a citizen and a resident of Carteret County, North Carolina.

2. The defendant The Boyd Group Inc. and its subsidiary, Gerber Collision (Northeast), Inc. (Hereinafter Collectively Referred to as the DEFENDANT EMPLOYER) is one of the largest operators of non-franchised collision repair centers in North America in terms of number of locations and sales. The Company currently operates locations in five Canadian provinces under the trade name Boyd Autobody & Glass, as well as in 19 U.S. states under the trade name Gerber Collision & Glass. The Company is also a major retail auto glass operator in the U.S. with locations across 31 U.S. states under the trade names Gerber Collision & Glass, Glass America, Auto Glass Service, Auto Glass Authority and Autoglassonly.com. The Company also operates a third-party administrator Gerber National Claims Services ("GNCS") that offers first notice of loss, glass and related services. GNCS has approximately 5,500 affiliated glass provider locations and 4,600 affiliated emergency roadside services providers throughout the U.S.

3. Defendant-employer has a principle place of business in Havelock, North Carolina, Craven County.

4. The defendant employer regularly employed 15 or more full-time employees at all times relevant to this action.

5. Defendant Christopher Hardin is a district manager employed by the defendant employer to supervise the district in which the Havelock office where plaintiff worked was located

6. Defendant Hardin is sued in his individual capacity. Defendant Hardin is a citizen and resident of North Carolina.

1

7. Plaintiff began working for the defendant-employer on November 1 2016 as the Lead Collision Technician at the Havelock N.C., Craven County location.

8. During his employment with the defendant employer, plaintiff was an excellent employee, receiving the highest customer service ratings, the lowest return back ratings, and he was the person responsible for opening the Havelock N.C. repair center at 6 a.m. and often worked until 9 p.m.

9. In July 2017 plaintiff was diagnosed with stage IV cancer.

10. In July 2017 plaintiff advised the defendant employer and defendant Hardin of his cancer diagnosis and that he would be undergoing treatment for the cancer.

11. Initially, the shop manager, Philip Weary, expressed support for Plaintiff. But that all changed when the shop manager attended a regional meeting in Wilmington North Carolina.

12. When the shop manager, Mr. Weary, returned from a regional meeting in Wilmington, he held a shop meeting with all the employees. During that meeting, in front of all of the other employees, the shop manager told plaintiff that corporate wanted the shop manager to get rid of Plaintiff because of his cancer. The shop manager stated the corporate wanted him gone.

13. The shop manager also told plaintiff that he had been instructed by defendant Hardin to pull plaintiff from all training sessions because of his cancer.

14. During the course of the next few months the defendant employer and defendant Hardin took specific action to discriminate against plaintiff Miller because of his disability.

15. The defendant employer and Defendant Hardin refused to allow plaintiff to attend any training sessions. On one occasion when the training instructor arrived, the first question he asked is, "where is the sick guy" referring to plaintiff. When the training began, the shop advised plaintiff that he had been instructed by the defendant employer and defendant Hardin that because of plaintiff's cancer, plaintiff was not to be allowed to participate in the training that all of the other technicians were allowed/required to attend.

16. In addition, the defendant employer and defendant Hardin started assigning to the plaintiff only the large "hard-hits" repairs because of his cancer diagnosis. The hard hits were normally distributed evenly among all of the technicians in the shop. The hard hits were very difficult repairs. They were difficult to do and difficult to earn money doing. The defendant employer and defendant Hardin assigned these hard hits to plaintiff because of his cancer.

17. The defendant employer and defendant Hardin also assigned the hard hits to Plaintiff as a means of harassment because of his disability and to reduce the amount of income Plaintiff could receive performing repairs.

2

18. The refusal to allow Plaintiff any training, the assignment of all the hard hits to Plaintiff, the comments to Plaintiff in the workplace that "corporate" wanted him gone because of his cancer, created a very stressful and untenable environment in which to work.

19. Plaintiff complained to Mr. Weary about the way he was being treated in the workplace. Mr. Weary told plaintiff that he was just going to have to put up with it, stating "you can't go anywhere because you need health insurance".

20. Plaintiff spoke to the shop estimator about the reason why he was getting all of the hard hits assigned to him. The estimator advised plaintiff that he had been instructed to assign all of the hard hits to plaintiff.

21. As a result of the defendant employer and defendant Hardin's actions, plaintiff suffered a significant amount of mental and emotional anguish and stress. In addition to being forced to deal with the severity of his diagnosis of cancer, plaintiff was forced to deal with the defendants' intentional attempt to force him out of the workplace, to deny him training, and to reduce his financial ability to take care of his family. From July 2017 through his last day of employment in December 17, plaintiff suffered stress, anxiety, loss of sleep, and depression on a daily basis as a result of the actions of the defendant employer and the defendant Hardin trying to make his workplace life miserable and force him out of work.

22. In early December 2017, plaintiff spoke to the new shop manager, Mark Cooper, about the way he was being treated in the workplace and how demeaned he felt because of the way he was being treated. Plaintiff advised Cooper that he felt like he was getting pushed out.

23. Cooper admitted to plaintiff that he was being pushed out. He stated that employees like him are just tools and when the tool wears out they get another tool.

24. Plaintiff felt that the situation was intentional, malicious and a humiliating, demeaning, unbearable and untenable workplace environment for him. For all of these reasons and more, the plaintiff resigned under coercion and duress.

25. The defendant employer violated Plaintiff's rights when it discriminated against him in terms and conditions of employment because of his diagnosis of cancer.

26. The defendant employer and defendant Hardin forced plaintiff to leave the workplace and resign his employment because of his handicap and/or disability, namely, cancer.

27. Plaintiff is a person who (i) has a physical impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

28. The defendant employer and defendant Hardin intentionally acted to create an environment that was extremely humiliating, demeaning and detrimental to plaintiff's physical, financial and mental wellbeing for the specific purpose of forcing the plaintiff out of the workplace because of his disability, cancer. The defendant employer's actions were cruel, intentional and malicious.

3

29. As a direct result of the defendant employer and defendant Hardin's cruel, intentional and malicious effort to force plaintiff out of the workplace because he has cancer, the plaintiff was forced to work daily in a workplace that was filled with insult, ridicule, and indignities.

30. The plaintiff's resignation from employment was not voluntary. Instead, the defendant employer and defendant Hardin acted with cruel and malicious intent to force plaintiff to resign.

31. The plaintiff's resignation was coerced by the defendant employer and defendant Hardin.

32. The plaintiff was forced out of the workplace under duress by the defendant employer and defendant Hardin.

33. Plaintiff's resignation was a direct result of the defendant employer and defendant Hardin's cruel, malicious and intentional plan to force plaintiff out of the workplace.

34. The plaintiff was effectively terminated from employment by the defendant employer and defendant Hardin.

### FIRST CAUSE OF ACTION
### THE NORTH CAROLINA PERSONS WITH DISABILITIES PROTECTION ACT

35. Plaintiff incorporates paragraph 1 through 34 as if fully set out herein.

36. N.C.G.S 168A states that the purpose of the North Carolina Persons With Disabilities Protection Act is to ensure equality of opportunity, to promote independent living, self-determination, and economic self-sufficiency, and to encourage and enable all persons with disabilities to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.

37. Plaintiff's cancer diagnosis qualifies as a disabling condition under N.C.G.S. 168A.

38. Plaintiff brings this claim pursuant to N.C.G.S.§ 168A-11. Plaintiff is a person with a disability aggrieved by a discriminatory practice prohibited by G.S. 168A-5 through 168A-8.

39. The plaintiff is a qualified person with a disability. Plaintiff is a person with a disability who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation.

40. Pursuant to N.C.G.S. 168A-5, it is a discriminatory practice for: (1) An employer to discharge, or otherwise to discriminate against a qualified person with a disability on the basis

4

of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment.

41. Plaintiff has been injured as a result of the defendant employer's conduct. As a direct result of the defendant employer's actions plaintiff has suffered lost wages and is entitled to an award of back pay and benefits.

42. The defendant employer's treatment of the plaintiff violates the provisions of N.C.G.S. § 168A-5 in that the defendant employer discharged, or otherwise discriminated against the plaintiff who is a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment.

43. Plaintiff has suffered lost wages as a result of the defendant employer's discriminatory conduct.

## SECOND CAUSE OF ACTION
## COMMON LAW WRONGFUL DISCHARGE

44. Plaintiff incorporates paragraph 1 through 34 as if fully set out herein.

45. It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of handicap or disability by employers which regularly employ 15 or more employees as stated in N.C.G.S. 143-422.2.

46. N.C.G.S 168A states that it is the public policy of the State of North Carolina that the practice of discrimination based upon a disabling condition is contrary to the public interest and to the principles of freedom and equality of opportunity; the practice of discrimination on the basis of a disabling condition threatens the rights and proper privileges of the inhabitants of this State; and such discrimination results in a failure to realize the productive capacity of individuals to their fullest extent.

47. The termination of the plaintiff contravenes and violates the public policy of the state of North Carolina to protect and safeguard the rights of all people to hold employment without discrimination on the bases of handicap and or disability. Plaintiff's termination therefore constitutes common law wrongful discharge in violation of the public policy of the State of North Carolina.

48. The defendant employer's officers, directors and/or managers acted in complete disregard of the known rights of the plaintiff, and employees like the plaintiff who suffer from a disability or handicap, to be free from discrimination based upon the disability or handicap.

49. The action of the defendant employer in terminating the plaintiff and violating the public policy as set out above was intentional, willful, wanton and malicious and therefore entitles plaintiff to recover punitive damages.

50. The officers, directors, or managers of the corporation participated in or condoned the intentional, willful, wanton and malicious conduct giving rise to punitive damages.

51. Plaintiff has been injured as a result of the defendant employer's conduct. As a direct result of the defendant employer's actions plaintiff has suffered lost wages, mental anxiety and anguish, damage to credit and financial status, and loss of benefits that he was receiving as an employee of the defendant employer.

### THIRD CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

52. Plaintiff incorporates paragraph 1 through 34 as if fully set out herein.

53. Plaintiff was employed by the defendant employer and therefore a valid contract between the plaintiff and defendant employer existed which conferred upon the plaintiff a contractual right against the defendant employer.

54. Defendant Hardin knew of the plaintiff's employment with the defendant employer.

55. The defendant Hardin intentionally caused the defendant employer to not perform under the terms of plaintiff's employment with the defendant employer, and in doing so, Defendant Hardin acted without justification.

56. Defendant Hardin's actions resulted in actual damage to the plaintiff.

57. The defendant Hardin acted out of personal hostility and ill-will toward the plaintiff. Defendant Hardin gave orders to refuse to allow plaintiff training, to only assign the plaintiff the "hard hits" and to otherwise force plaintiff out of the workplace because of his personal ill will toward the plaintiff.

58. Defendant Hardin acted with the specific intent to cause defendant employer to create an unbearable and untenable work environment, to deny plaintiff training, to assign plaintiff the hard hits, to reduce plaintiff's income, and to otherwise create an atmosphere of insult, ridicule and indignities for the purpose of forcing plaintiff out of the workplace and causing the termination of plaintiff's employment with the defendant employer.

59. The defendant Hardin acted intentionally and maliciously.

60. The defendant Hardin committed wrongful acts and/or exceeded his legal right or authority in order to prevent the continuation of the plaintiff's employment. The defendant Hardin acted without any legal justification for his action.

61. Plaintiff has been injured as a result of the defendant Hardin's conduct. As a direct result of the defendant Hardin's actions, plaintiff has suffered lost wages, mental anxiety and anguish, damage to credit and financial status, and loss of benefits that he was receiving as an employee of the defendant.

62. The actions of the defendant Hardin, as set out above, were intentional, willful, wanton and malicious and therefore entitles plaintiff to recover punitive damages.

## JURY DEMAND

63. Plaintiff requests a jury trial on all issues, except the statutory claims under N.C.G.S. 168A.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFF RESPECTFULLY REQUESTS:

1. Compensatory and punitive damages incurred or to be incurred in excess of twenty-five thousand dollars ($25,000.00).

2. Pursuant to N.C.G.S. 168A, declaratory and injunctive relief.

3. The court award back pay.

4. The court award reasonable attorney's fees to the plaintiff as part of costs pursuant to N.C.G.S. 168A.

5. A trial by jury and all issues that are so are triable.

6. Such other and further relief that the court deems appropriate.

This the 5th day of March 2018.

Ralph T. Bryant, Jr.
Attorney at Law
(N.C. State Bar No. 18119)
P.O. Box 723
Newport, North Carolina 28570
Phone (877) 277-9495
Fax (252) 294-1624
attorneyralphbryantjr@gmail.com
www.attorneyralphbryantjr.com

7