IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-18-D

| | | |
|---|---|---|
| MICHAEL DEWAYNE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GERBER COLLISION (NORTHEAST), | ) | |
| INC., BOYD GROUP (U.S.), INC., and | ) | |
| CHRISTOPHER HARDIN, | ) | |
| | ) | |
| Defendants. | ) | |

On December 31, 2018, Michael Dewayne Miller ("Miller" or "plaintiff") filed a complaint in Craven County Superior Court against Gerber Collision (Northeast), Inc. ("Gerber"), Boyd Group (U.S.), Inc. ("Boyd"), and Christopher Hardin ("Hardin"; collectively "defendants") [D.E. 21-1]. Miller alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA") against Gerber and Boyd, tortious interference with contract against Hardin, intentional infliction of emotional distress against all defendants, and wrongful constructive discharge in violation of public policy against Gerber and Boyd. See id. On January 30, 2019, defendants removed the action to this court [D.E. 1].

On February 6, 2019, Gerber and Boyd moved to dismiss Miller's wrongful constructive discharge claim and all claims against Boyd for failure to state a claim [D.E. 11] and filed a memorandum in support [D.E. 12]. On the same date, Gerber and Boyd answered the complaint [D.E. 10]. On February 27, 2019, Miller responded in opposition [D.E. 15]. On March 12, 2019, Boyd and Gerber replied [D.E. 16]. As explained below, the court grants defendants' partial motion to dismiss.

I.

Boyd operates non-franchised collision repair centers in North America. See Compl. [D.E. 21-1] ¶ 2. Gerber, Boyd's subsidiary, operates in five Canadian provinces and nineteen states. See id. Hardin is the district manager for the location in Havelock, North Carolina. See id. ¶¶ 6, 8.

On November 1, 2016, Gerber hired Miller for the position of Lead Collision Technician at the Havelock location. See id. ¶ 8. Miller alleges that he was "an excellent employee" who "receiv[ed] the highest customer service ratings," was responsible for opening the repair center at 6 a.m., and often worked fifteen hours per day. Id. ¶ 9. In July 2017, Miller learned that he had Stage IV cancer and informed Hardin of his diagnosis and need for treatment. See id. ¶¶ 10–11.

The Havelock shop manager, Philip Weary ("Weary"), initially supported Miller. See id. ¶ 12. After Weary returned from a regional meeting, however, Miller alleges that Weary announced to the employees that management wanted Miller "gone" because of his cancer. See id. ¶¶ 12–13. Weary also told Miller that Hardin instructed him to pull Miller from all training sessions. See id. ¶¶ 14, 16. All other technicians attended training sessions. See id. ¶ 16. On one occasion, Miller alleges that the training instructor arrived and immediately asked where the "sick guy" (i.e., Miller) was. See id.

Miller also alleges that Weary and Hardin assigned Miller only very difficult "hard-hits" collision repair jobs after his diagnosis. See id. ¶ 17. Normally, defendants assigned hard-hits among the shop technicians because the repairs were difficult and less profitable for the individual technician. See id. Miller alleges that defendants assigned him hard-hits to harass him and to reduce his income. See id. ¶ 18. When Miller asked the Havelock location's estimator why he had been assigned all of the hard-hits, the estimator told Miller that he had been instructed to do so. See id. ¶ 21.

2

Miller complained to Weary, but Weary told Miller "that [Miller] was just going to have to put up with it" because Miller needed health insurance. Id. ¶ 20. In December 2017, Miller complained to the new shop manager, Mark Cooper ("Cooper"), that defendants were forcing him out. See id. ¶ 24. Miller alleges that Cooper replied that employees are tools and that, when tools wear out, they are replaced. See id. ¶ 25. On December 5, 2017, Miller resigned. See id. ¶¶ 26, 30–34.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

A.

In his complaint, Miller alleges wrongful constructive discharge in violation of North Carolina public policy. See Compl. [D.E. 21-1] ¶¶ 76–84. Defendants respond that North Carolina does not recognize a cause of action for wrongful constructive discharge in violation of public policy. See Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting)).

This court must predict how the Supreme Court of North Carolina would rule on this disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted).

---

[1] North Carolina does not have a "mechanism . . . to certify questions of state law to its Supreme Court." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted).

4

Federal district courts applying North Carolina law have construed Whitt to preclude a claim of wrongful constructive discharge in violation of North Carolina public policy. See Armitage v. Biogen Inc., No. 1:17CV1133, 2019 WL 1789909, at *8 (M.D.N.C. Apr. 24, 2019) (unpublished); Perry v. Diversified Wood Prods., Inc., No. 2:16-CV-84-D, 2018 WL 3945933, at *7 (E.D.N.C. Aug. 16, 2018) (unpublished); McDonald v. Hanger Prosthetics & Orthotics, Inc., No. 7:14-CV-91-D, 2014 WL 4978505, at *1 (E.D.N.C. Oct. 6, 2014) (unpublished); Littell v. Diversified Clinical Servs., Inc., No. 1:10CV152, 2013 WL 1951912, at *7–8 (M.D.N.C. May 10, 2013) (unpublished), report and recommendation adopted in part and rejected in part on other grounds, 2013 WL 5430518 (M.D.N.C. Sept. 27, 2013) (unpublished); Baldwin v. Tradesman Int'l, Inc., No. 5:12-CV-116-FL, 2013 WL 1192314, at *9 (E.D.N.C. Mar. 22, 2013) (unpublished); Jackson v. Weight Watchers Int'l, Inc., No. 3:10CV363, 2011 WL 1843223, at *3 (W.D.N.C. May 16, 2011) (unpublished); Parker v. Miller & Long Constr. Co., No. 5:10-CV-282-D, 2010 WL 5478466, at *2 (E.D.N.C. Dec. 30, 2010) (unpublished); Williams v. Target Corp., No. 3:10CV136-RJC-DSC, 2010 WL 2650847, at *3 (W.D.N.C. Apr. 22, 2010) (unpublished), report and recommendation adopted, 2010 WL 2650845 (W.D.N.C. July 1, 2010) (unpublished); see also Gallimore v. Newman Mach. Co., 301 F. Supp. 2d 431, 453–54 (M.D.N.C. 2004); Johnson v. Food Lion, LLC., No. 1:02CV904, 2003 WL 22741156, at *4 (M.D.N.C. Nov. 17, 2003) (unpublished); see also Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002) (per curiam) (unpublished). But see McHan v. Cherokee Cty., 2:06CV21, 2006 WL 3694540, at *2–3 (W.D.N.C. Dec. 13, 2006) (unpublished). Moreover, the North Carolina Court of Appeals has construed Whitt similarly. See Clarke v. United Emergency Servs., Inc., 189 N.C. App. 787, 661 S.E.2d 55, 2008 WL 1723229, at *4–5 (Apr. 15, 2008) (unpublished table decision).

This court agrees that Whitt precludes a claim of wrongful constructive discharge in violation

5

of North Carolina public policy. Accordingly, the court grants Gerber and Boyd's motion to dismiss this claim. Moreover, amendment pursuant to Rule 15(a) of the Federal Rules of Civil Procedure would be futile. See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999); Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). Thus, the court dismisses Miller's wrongful constructive discharge claim with prejudice.

B.

Miller also alleges a disability discrimination claim under the ADA and an intentional infliction of emotional distress claim against Boyd. See Compl. [D.E. 21-1] ¶¶ 35–53, 67–75. Boyd and Gerber argue that Miller does not plausibly allege that Boyd, the parent company, is an "integrated employer" with Gerber, its subsidiary. See [D.E. 16]. Thus, Boyd and Gerber contend that the court should dismiss all claims against Boyd.

"A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir. 1987); see Clark v. Top Shelf Entm't, LLC, No. 3:16-CV-144-MOC-DSC, 2017 WL 971051, at *2–3 (W.D.N.C. Mar. 13, 2017) (unpublished); Chamberlain v. Securian Fin. Grp., Inc., 180 F. Supp. 3d 381, 406 (W.D.N.C. 2016). Courts "have found parent corporations to be employers only in extraordinary circumstances." Johnson, 814 F.2d at 981. Thus, the parent company retains the protections of limited liability for acts of the subsidiary absent extraordinary indicia of control over the subsidiary's decisionmaking. See id.; see also Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 349–50 (4th Cir. 1998); Glenn v. Wagner, 313 N.C. 450, 454–55, 329 S.E.2d 326, 330–31 (1985).

6

Miller's complaint contains only legal conclusions concerning the relationship between Boyd and Gerber. Because Miller does not plausibly allege that Boyd's control over Gerber amounted to complete domination or that Boyd controlled Gerber's personnel employment decisions, Boyd retains the protections of limited liability for the actions of its subsidiary, Gerber. Accordingly, the court grants Boyd and Gerber's motion to dismiss the disability discrimination and intentional infliction of emotional distress claims against Boyd, and the court dismisses those claims as to Boyd without prejudice.

III.

In sum, the court GRANTS Boyd and Gerber's partial motion to dismiss [D.E. 11], DISMISSES WITH PREJUDICE Miller's wrongful constructive discharge claim, and DISMISSES WITHOUT PREJUDICE the remaining claims against Boyd.

SO ORDERED. This 2 day of May 2019.

                                                          JAMES C. DEVER III
                                                          United States District Judge