IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-18-D

MICHAEL DEWAYNE MILLER,            )
                                    )
                Plaintiff,          )
                                    )
        v.                          )           **ORDER**
                                    )
GERBER COLLISION (NORTHEAST),      )
INC. and CHRISTOPHER HARDIN,       )
                                    )
                Defendants.         )

On December 31, 2018, Michael Dewayne Miller ("Miller" or "plaintiff") filed a complaint in Craven County Superior Court against Gerber Collision (Northeast), Inc. ("Gerber"), Boyd Group (U.S.), Inc. ("Boyd"), and Christopher Hardin ("Hardin"; collectively "defendants") [D.E. 21-1]. Miller alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA") against Gerber and Boyd, tortious interference with contract against Hardin, intentional infliction of emotional distress against all defendants, and wrongful constructive discharge in violation of public policy against Gerber and Boyd. See id. On January 30, 2019, defendants removed the action to this court [D.E. 1]. On May 2, 2019, the court granted Gerber and Boyd's partial motion to dismiss, dismissed Miller's wrongful constructive discharge claim, and dismissed Miller's remaining claims against Boyd [D.E. 22]. On May 3, 2019, Hardin moved to dismiss all claims against him for failure to state a claim [D.E. 25] and filed a memorandum in support [D.E. 26]. On May 28, 2019, Miller responded in opposition [D.E. 29]. On June 10, 2019, Hardin replied [D.E. 31]. As explained below, the court grants Hardin's motion to dismiss.

I.

Gerber is a subsidiary of Boyd, which operates non-franchised collision repair centers throughout North America. See Compl. [D.E. 21-1] ¶ 2. Hardin is the district manager for the location in Havelock, North Carolina. See id. ¶¶ 6, 8.

On November 1, 2016, Gerber hired Miller for the position of Lead Collision Technician at the Havelock location. See id. ¶ 8. Miller alleges that he was "an excellent employee" who "receiv[ed] the highest customer service ratings," was responsible for opening the repair center at 6 a.m., and often worked fifteen hours per day. Id. ¶ 9. In July 2017, Miller learned that he had Stage IV cancer and informed Hardin of his diagnosis and need for treatment. See id. ¶¶ 10–11.

The Havelock shop manager, Philip Weary ("Weary"), initially supported Miller. See id. ¶ 12. After Weary returned from a regional meeting, however, Miller alleges that Weary announced to the employees that management wanted Miller "gone" because of his cancer. See id. ¶¶ 12–13. Weary also told Miller that Hardin instructed him to pull Miller from all training sessions. See id. ¶¶ 14, 16. All other technicians attended training sessions. See id. ¶ 16. On one occasion, Miller alleges that the training instructor arrived and immediately asked where the "sick guy" (i.e., Miller) was. See id. Miller also alleges that Weary and Hardin assigned Miller only very difficult "hard-hits" collision repair jobs after his diagnosis. See id. ¶ 17. Normally, defendants assigned hard-hits among the shop technicians because these repairs were difficult and less profitable for the individual technician. See id. Miller alleges that defendants assigned him hard-hits to harass him and to reduce his income. See id. ¶ 18. When Miller asked the Havelock location's estimator why he had been assigned all of the hard-hits, the estimator told Miller that he had been instructed to do so. See id. ¶ 21.

Miller complained to Weary, but Weary told Miller "that [Miller] was just going to have to

2

put up with it" because Miller needed health insurance. Id. ¶ 20. In December 2017, Miller complained to the new shop manager, Mark Cooper ("Cooper"), that defendants were forcing him out. See id. ¶ 24. Cooper replied that employees are tools and that, when tools wear out, they are replaced. See id. ¶ 25. On December 5, 2017, Miller resigned. See id. ¶¶ 26, 30–34.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

A.

As for Hardin's motion to dismiss Miller's tortious interference with contract claim, under

3

North Carolina law, a plaintiff must prove five elements to state a claim for tortious interference with contract: (1) a valid contract between the plaintiff and a third-party that gives the plaintiff a contractual right against the third-party, (2) the defendant knows of the contract, (3) the defendant intentionally induces the third-party not to perform the contract, (4) the defendant acts without justification, and (5) the defendant's conduct causes actual damages to the plaintiff. See Krawiec v. Manly, 370 N.C. 602, 606–07, 811 S.E.2d 542, 546 (2018); Embree Constr. Grp. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992); United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); Benjamin v. Sparks, 173 F. Supp. 3d 272, 289 (E.D.N.C. 2016); Clinical Staffing, Inc. v. Worldwide Travel Staffing Ltd., 60 F. Supp. 3d 618, 626–27 (E.D.N.C. 2013). Miller alleges that Hardin, by assigning him more difficult hard-hits, removing him from training sessions, and otherwise acting against him because of his terminal cancer diagnosis, induced Gerber, a third-party, not to perform its employment contract with Miller when Miller decided to retire involuntarily.

Because Miller ended the employment relationship between himself and Gerber, Miller has not plausibly alleged that Hardin's actions induced Gerber not to perform the contract with Miller. Miller does not identify any North Carolina court that has held that a plaintiff who ends an employment contract—even if the plaintiff alleges that he did so involuntarily—has stated a plausible claim for tortious interference with contract. Cf. Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting) (holding that North Carolina does not recognize a cause of action for constructive wrongful discharge in violation of public policy); Clark v. United Emergency Servs., Inc., 189 N.C. App. 787, 661 S.E.2d 55, 2008 WL 1723229, at *4–5 (Apr. 15, 2008) (unpublished table decision); Armitage v. Biogen Inc., No.

4

1:17CV1133, 2019 WL 1789909, at *8 (M.D.N.C. Apr. 24, 2019) (unpublished); Perry v. Diversified Wood Prods., Inc., No. 2:16-CV-84-D, 2018 WL 3945933, at *7 (E.D.N.C. Aug. 16, 2018) (unpublished). This court declines to expand the doctrine of tortious interference with contract under North Carolina law. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Thus, Miller has not plausibly alleged that Hardin intentionally induced Gerber not to perform its contract with Miller. Accordingly, the court grants Hardin's motion to dismiss and dismisses the claim.

B.

As for Hardin's motion to dismiss Miller's intentional infliction of emotional distress ("IIED") claim, under North Carolina law, a plaintiff must plausibly allege that (1) the defendants engaged in extreme and outrageous conduct, (2) the conduct was intended to cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Under North Carolina law, it is extremely rare to find conduct in the employment context that rises to the level of outrageousness necessary to support an IIED claim. See, e.g., Everett v. Redmon, No. 7:16-CV-323-D, 2017 WL 2313468, at *9 (E.D.N.C. May 26, 2017) (unpublished);

Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 340–41 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544–45 (E.D.N.C. 2008) (collecting cases); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999). "[L]iability clearly does not extend to mere insults, indignities, [or] threats . . . ." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123. Rather, "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher, 545 F. Supp. 2d at 545 (collecting cases); see Moody-Williams v. LipoScience, 953 F. Supp. 2d 677, 683 (E.D.N.C. 2013); Payne v. Whole Foods Mkt. Grp., 812 F. Supp. 2d 705, 710 (E.D.N.C. 2011), aff'd, 471 F. App'x 186 (4th Cir. 2012) (per curiam) (unpublished).

Miller does not plausibly allege that defendants directed any sexual or racial harassment, threats of physical or emotional harm, physical contact, or other similar misconduct at him. Hardin's alleged conduct is not extreme and outrageous conduct as a matter of law. See, e.g., Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 774 (4th Cir. 1997); Everett, 2017 WL 2313468, at *9; Howard, 262 F. Supp. 3d at 340–41; Moody-Williams, 953 F. Supp. 2d at 682–84; Bratcher, 545 F. Supp. 2d at 544–45; Sims-Campbell v. Welch, 239 N.C. App. 503, 509, 769 S.E.2d 643, 648–49 (2015); Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23. Federal courts, sitting in diversity and applying North Carolina law, have dismissed IIED claims in analogous situations under Rule 12(b)(6). See, e.g., Atkins, 106 F. Supp. 2d at 810–11. Thus, Miller does not plausibly state a claim for IIED, and the court grants Hardin's motion to dismiss Miller's IIED claim.[1]

---

[1] Hardin also moves to dismiss Miller's disability discrimination claim under the Americans with Disabilities Act ("ADA") and Miller's claim for common law constructive wrongful discharge.

6

III.

In sum, the court GRANTS Hardin's motion to dismiss for failure to state a claim [D.E. 25] and DISMISSES without prejudice Miller's claims against Hardin. The clerk shall continue management of the case.

SO ORDERED. This 19 day of June 2019.

JAMES C. DEVER III
United States District Judge

---

Miller did not respond in opposition to Hardin's motion to dismiss these claims, and the court does not read Miller's complaint to allege such claims against Hardin. To the extent that Miller does allege these claims against Hardin, both fail. First, the ADA does not recognize individual liability. See Amos v. Welles, No. 4:18-CV-28-D, 2018 WL 5305537, at *1 (E.D.N.C. Oct. 25, 2018) (unpublished) (collecting cases). Second, North Carolina law does not recognize a cause of action for constructive wrongful discharge in violation of public policy. See Whitt, 359 N.C. at 625, 614 S.E.2d at 532; Clark, 2008 WL 1723229, at *4–5; Armitage, 2019 WL 1789909, at *8; Perry, 2018 WL 3945933, at *7.

7